(132 P.3d 959)

No. 94,130

STATE OF KANSAS, *Appellee*, v. NICOMEDES BARAHONA, *Appellant*.

Opinion filed April 28, 2006.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Bryant T. Barton*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., MARQUARDT and HILL, JJ.

RULON, C.J.: Defendant Nicomedes Barahona appeals the district court's denial of his motion to withdraw his plea, claiming his plea hearing violated his due process rights and that he was afforded ineffective assistance of counsel. We affirm.

The defendant claims the district court erred in summarily denying his request to withdraw his plea. Primarily, the defendant claims the district court violated his due process rights by failing to address the defendant to determine whether the plea was entered knowingly and voluntarily. We disagree.

After sentencing, a district court may permit a defendant to withdraw a plea, if doing so will correct a manifest injustice. K.S.A. 2005 Supp. 22-3210(d). A decision regarding a motion to withdraw a plea lies entirely within the discretion of the district court. An

appellate court will not disturb the exercise of such discretion absent a demonstration of abuse. See *State v. Muriithi*, 273 Kan. 952, 955, 46 P.3d 1145 (2002). Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable so that no reasonable person would take the view adopted by the court. See *State v. Murray*, 22 Kan. App. 2d 340, 346, 916 P.2d 712 (1996).

The requirements in accepting a plea set forth in K.S.A. 2005 Supp. 22-3210(a) encapsulate the due process standard announced in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); see *Muriithi*, 273 Kan. at 964. In pertinent part, the statute provides:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

. . . .

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

A review of the plea hearings conducted in this case reveals a personal inquiry of the defendant by the district court about the defendant's understanding of the charges and the potential consequences. The only objection to the sentencing hearing raised by the defendant is the court's failure to address the defendant about the voluntariness of the plea.

While the record clearly reveals the district court's failure to question the defendant about the knowing and voluntary nature of his plea, a failure to strictly comply with the provisions of K.S.A. 2005 Supp. 22-3210(a) does not necessarily mandate reversal. See *Trotter v. State*, 218 Kan. 266, 268-69, 543 P.2d 1023 (1975).

"While we do not approve of any failure to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal. If upon review of the entire record it can be determined that the pleas of guilty [or nolo contendere] were knowingly and voluntarily made, the error resulting from failure to comply strictly with K.S.A. 22-3210 is harmless." *Trotter*, 218 Kan. at 269.

A review of the plea hearing transcripts leaves no doubt as to the defendant's understanding of his plea. Because of the confusion related to the applicable criminal history score, the defendant was

provided with two hearings, rather than just one. During the second hearing, the defendant's attorney informed the court that he had explained the changes in the plea agreement to the defendant. Later, the district court specifically asked the defendant whether the defendant understood what his attorney had just stated and whether the defendant understood the ramifications of the change in the plea agreement. The defendant confirmed that he did.

Furthermore, the plea agreement was accompanied in this case by a written acknowledgment of a waiver of rights, signed by the defendant wherein the defendant acknowledged: "I do this of my own free will and under no threat, intimidation or coercion, and no promises have been made to me by my attorney, any police officer, or any prosecuting attorney as to what I should expect to receive from this."

Most persuasively, however, the defendant wrote a series of letters to the district court in this case. The first, dated October 11, 1994, was received by the district court prior to the plea agreement in this case, which was dated November 7, 1994. Within that letter, the defendant wrote:

"Your [sic] handeling [sic] my case in Riley County District Court. My case number is 94-CR-630. . . . Your honor, im [sic] not writeing [sic] to justify my criminal actions, Because there is no way for me to justify my action. . . . I found a girl I really love. she [sic] got pregnant & I didn't know what to do. My mom wouldn't have helpt [sic] out neither would her parents. so [sic] I resorted to a quick way of cash to help her out. I did the robbery, which im [sic] in here for."

Prior to trial, the defendant had admitted committing one of the crimes to which he ultimately entered a plea. On October 8, 10, and 31, the district court received other letters from the defendant. Within these letters, the defendant begged the court for leniency and mercy, but the defendant never proclaimed his innocence of any of the charges he faced. There is nothing to indicate these letters were coerced in any manner or that the defendant desired a trial, which would undermine his later acknowledgment of the voluntariness of his plea within the plea agreement.

Although Kansas courts have not previously defined the term "manifest injustice" within the context of a motion to withdraw a plea, cases involving other contexts in which that standard has been

applied have equated "manifest injustice" to something obviously unfair or shocking to the conscience. See *State v. Turley*, 17 Kan. App. 2d 484, Syl. ¶ 2, 840 P.2d 529, *rev. denied* 252 Kan. 1094 (1992) (interpreting "manifest injustice" standard in K.S.A. 1991 Supp. 21-4618[3]); *State v. Cramer*, 17 Kan. App. 2d 623, 635, 841 P.2d 1111 (1992), *rev. denied* 252 Kan. 1094 (1993) (same).

One consideration courts have given to a request of a defendant to withdraw a plea is the timeliness of the request. See *United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997) (under a "fair and just reason" standard, a court properly considers whether the defendant asserted innocence, whether the government is prejudiced by a withdrawal of the plea, whether the defendant delayed in filing a motion to withdraw the plea, whether the court will be inconvenienced, whether the defendant possessed the assistance of counsel, whether the plea was knowing and voluntary, and whether judicial resources will be squandered); *People v. Castaneda*, 37 Cal. App. 4th 1612, 1618, 44 Cal. Rptr. 2d 666 (1995) (requiring defendant to justify lapse of time between entry of plea and motion to withdraw if the delay is significant); *Commonwealth v. Gonzales*, 43 Mass. App. 926, 685 N.E.2d 1163 (1997) (attaching a presumption of regularity to plea proceedings when attempt to withdraw plea brought 10 years after entry of plea); *Doughman v. State*, 351 N.W.2d 671, 675 (Minn. App. 1984) (questioning validity of claims raised in a motion to withdraw a plea filed 22 months after entry of plea); *State v. Tweed*, 312 Mont. 482, 490, 59 P.3d 1105 (2002) (applying an abuse of discretion standard to review of district court's refusal to allow the withdrawal of a plea; the court considered, in part, the promptness with which the defendant brought the motion to withdraw the plea); *Hart v. State*, 116 Nev. 558, 563, 1 P.3d 969 (2000) (considering whether inexcusable delay or implied waiver due to defendant's knowing acquiescence to plea proceeding prevented a finding of manifest injustice warranting withdrawal of the plea); *State v. Marshburn*, 109 N.C. App. 105, 108, 425 S.E.2d 715 (1993) (requiring a more compelling reason to withdraw plea when request is made 8 months after plea was entered); *State v. Bush*, 96 Ohio St. 3d 235, 239, 773 N.E.2d 522

(2002) (undue delay in filing motion to withdraw plea is a factor adversely affecting the credibility of the movant's claims).

The defendant filed this motion to withdraw his plea nearly 10 years after being sentenced. While his criminal history score continues to reflect the convictions resulting from his pleas, he has effectively served the entire underlying sentence for these crimes. The record of the original proceedings disputes the defendant's claim that he maintained his innocence but was pressured into a plea by his attorney.

Under these circumstances, no reasonable person in the position of the district court judge would conclude that enforcing the plea agreement was obviously unfair or shocking to the conscience. Consequently, the district court did not abuse its discretion in refusing to allow the defendant to withdraw his plea.

Alternatively, the defendant argues the district court should have allowed him to withdraw his plea due to the ineffective assistance of trial counsel. Again, the standard the defendant needs to meet is manifest injustice. K.S.A. 2005 Supp. 22-3210(d).

To demonstrate constitutionally ineffective assistance of counsel, the movant must satisfy a two-prong test: (1) the performance of counsel must be so deficient as to impinge upon the guarantees of the Sixth Amendment to the United States Constitution; and (2) the deficient performance must be of a serious nature, prejudicing the movant's ability to obtain a fair trial. See *State v. Rice*, 261 Kan. 567, 599, 932 P.2d 981 (1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 [1984]).

" 'In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258, 36 L. Ed. 2d 235, 93 S. Ct. 1602 (1973)], and *McMann v. Richardson*, [397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 58-59." *Muriithi*, 273 Kan. at 956 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 106 S. Ct. 366 [1985]).

In evaluating counsel's performance, a court must view the representation in light of knowledge a reasonable attorney possessed, or should have possessed, at the time of the performance in question. "Wisdom gained through hindsight cannot be used to gauge effectiveness of counsel. In retrospect, the possibility that some strategy or procedure, different from that used by the accused's lawyer, might have brought about better results for the accused, is wholly insufficient to sustain a claim of ineffective assistance of counsel." *State v. Hernandez*, 227 Kan. 322, 328, 607 P.2d 452 (1980).

## Failure to File Pretrial Motions

One of the allegations raised by the defendant is his trial attorney's failure to file any pretrial motions or to conduct pretrial investigations. As we understand, this failure demonstrates his attorney's intent to force the defendant to enter a plea instead of going to trial. However, the defendant fails to articulate what motions his attorney might have filed which would have benefitted the defense.

The defendant bears the burden of proving that the representation of his trial counsel was deficient by a preponderance of the evidence. *Wright v. State*, 5 Kan. App. 2d 494, 495, 619 P.2d 155 (1980); Rule 183(g) (2005 Kan. Ct. R. Annot. 228). Merely speculative allegations are insufficient to mandate an evidentiary hearing. See *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

## Failure to Inform of Collateral Consequences

This defendant also contends his trial attorney was constitutionally ineffective in failing to inform the defendant that his convictions for robbery and burglary would not consolidate and would count separately in future criminal history determinations. This argument is devoid of legal merit. At the second plea agreement hearing, during which the defendant was present, the trial attorney stated:

"The benefit to the State is that by agreeing with us to withdraw this or the plea, they are getting a higher level felony 94 CR 630 as well as a person felony instead of a non-person. And I've advised Mr. Barahona what that means is if he is ever faced with a sentencing situation again, should he ever be convicted of another

crime, his criminal history would be greater because of the burglary than it would have been for the criminal use of a communications facility."

Moreover, due process does not require that the defendant be notified of collateral consequences arising from entering a plea, including the effect such convictions might have on his or her future criminal history. See *In re J.C.*, 260 Kan. 851, Syl. ¶ 2, 925 P.2d 415 (1996) (holding that juvenile's plea without being informed of the possibility that conviction might affect future status as a juvenile offender does not violate due process); *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 246-47, 822 P.2d 72 (1991) (due process does not require a criminal defendant to be informed of the possibility that a conviction as the result of a plea may be used to enhance the sentence for a later crime).

Therefore, even if defendant's attorney had failed to inform the defendant that the two person felonies to which he was entering a plea would count against his criminal history at a later date, this failure does not equal constitutionally deficient representation.

## Failure to Provide Charges and a Copy of the Plea Agreement

Next, the defendant contends his attorney failed to provide the defendant with a copy of the charges filed against him and a copy of the plea agreement. While the record does not demonstrate the defendant was given his own copy of the plea agreement, which clearly lists the applicable charges and the sentencing range, the defendant acknowledged he had read and understood the plea agreement, evidenced by his signature.

Additionally, though the secondary charge in the agreement was subsequently amended, the amendment was explained to the defendant in open court. The defendant was told the applicable sentencing range and specifically questioned whether he understood the charges against him. Defense counsel's representation in this matter was constitutionally sufficient. Furthermore, if the representation had been deficient in this regard, the defendant cannot demonstrate prejudice therein.

### Failure to Notify of Postrelease Supervision Period

The defendant also claims that his counsel was ineffective in failing to advise him of the potential postrelease supervisory period applicable to his convictions for robbery and burglary as a result of his plea. The record supports his contention, as it is silent on the issue of the period of postrelease supervision applicable to the defendant's convictions, except within the journal entry of sentencing.

As previously stated, due process only requires that a criminal defendant be notified of the direct consequences of his plea, not collateral consequences. See *Muriithi*, 273 Kan. at 964; *Bussell v. State*, 25 Kan. App. 2d 424, 426-27, 963 P.2d 1250, *rev. denied* 266 Kan. 1107 (1998). However, unlike the criminal history consequences of entering a plea, the postrelease supervision period attending a felony conviction is not speculative or conditional. A direct penal consequence is "definite, immediate, and almost automatic as a result of [a] guilty plea." *Bussell*, 25 Kan. App. 2d at 427.

Although Kansas has not considered whether the postrelease supervision period constitutes a direct or a collateral consequence within the meaning of due process, such jurisdictions which have considered the question have nearly uniformly held that a mandatory supervised parole or release period is a direct penal consequence of the plea. See *United States v. Yazbeck*, 524 F.2d 641, 643 (1st Cir. 1975); *Ferguson v. United States*, 513 F.2d 1011, 1012 (2d Cir. 1975); *Roberts v. United States*, 491 F.2d 1236 (3d Cir. 1974); *Moore v. United States*, 592 F.2d 753 (4th Cir. 1979); *United States v. Garcia-Garcia*, 939 F.2d 230 (5th Cir. 1991); *United States v. Syal*, 963 F.2d 900 (6th Cir. 1992); *United States v. Richardson*, 483 F.2d 516 (8th Cir. 1973); *United States v. Roberts*, 5 F.3d 365 (9th Cir. 1993); *United States v. Watson*, 548 F.2d 1058 (D.C. Cir. 1977); *In re Moser*, 6 Cal. 4th 342, 862 P.2d 723 (1993); *Craig v. People*, 986 P.2d 951 (Colo. 1999); *Barkley v. State*, 724 A.2d 558 (Del. Super. 1999); *People v. Blackburn*, 46 Ill. App. 3d 213, 360 N.E.2d 1159 (1977); *State v. Henthorne*, 637 N.W.2d 852 (Minn. App. 2002); *People v. Melio*, 304 App. Div. 2d 247, 760 N.Y.S.2d 216 (2003); *State v. Acevedo*, 137 Wash. 2d 179, 970 P.2d 299 (1999).

However, almost as uniformly, federal jurisdictions have concluded that due process is not violated by failure to advise a criminal defendant of the applicability of a postrelease supervisory period or mandatory parole, *if* the sentence assigned to the defendant and any mandatory supervised period following his or her release does not exceed the maximum penalty term the defendant was told at sentencing. See *United States v. Raineri*, 42 F.3d 36 (1st Cir. 1994), *cert. denied* 515 U.S. 1126 (1995); *United States v. Andrades*, 169 F.3d 131 (2d Cir. 1999); *United States v. Good*, 25 F.3d 218 (4th Cir. 1994); *United States v. Saenz*, 969 F.2d 294 (7th Cir. 1992); *United States v. Osment*, 13 F.3d 1240 (8th Cir. 1994); *United States v. Barry*, 895 F.2d 702 (10th Cir.), *cert. denied* 496 U.S. 939 (1990); *United States v. Carey*, 884 F.2d 547 (11th Cir. 1989), *cert. denied* 494 U.S. 1067 (1990).

At the original plea hearing, prior to the amended plea agreement, the district court advised the defendant that he could potentially serve 31 to 136 months for a conviction of robbery. The defendant entered a plea of no contest to that charge. Although the plea agreement was amended, which changed the second crime to which the defendant entered a plea, the plea related to the robbery was untouched in the subsequent plea proceedings at the sentencing hearing.

The amendment to the plea agreement affected the sentence ultimately imposed upon the defendant's robbery conviction by dropping his criminal history score from a G to an H, but the sentencing range announced by the district court prior to accepting the defendant's plea did not change.

Ultimately, the defendant was sentenced to serve 36 months in prison for the robbery conviction, 13 months for the burglary conviction, and a postrelease supervision period of 24 months. Even if the defendant served the full term of his robbery sentence before beginning his postrelease supervision period, the duration of the defendant's total penal consequences of entering a guilty plea would not exceed the 136-month total advised by the district court. Consequently, the failure to notify the defendant of the consequences of the postrelease supervision term prior to accepting the

defendant's plea did not violate the defendant's due process rights in this case.

If a defendant can demonstrate no due process violation in his or her attorney's failure to advise of the postrelease consequences of his or her plea, the defendant cannot demonstrate the prejudice required to permit a withdrawal of a plea for ineffective assistance of counsel. As the defendant was notified that he faced a sentence of 136 months prior to entering a plea of nolo contendere to the robbery charge, he cannot demonstrate a probability that, but for his counsel's failure to advise him of the postrelease supervision period of 24 months, he would have proceeded to trial instead of entering a plea.

### Right to Contact Consulate

Finally, the defendant argues the representation of his trial attorney was constitutionally ineffective for failing to advise the defendant to his right to contact his consulate under the Geneva Convention. Other than a reference to Panama in one of his letters to the district court, there is no evidence within the record to support a claim that the defendant is a foreign national entitled to the protection of the Geneva Convention. The defendant does not allege that he is not a citizen of the United States.

Furthermore, the defendant utterly fails to demonstrate how speaking to a consulate of a foreign nation would have assisted in his defense. This claim is devoid of legal merit.

Because the defendant has failed to present a colorable claim for ineffective assistance of counsel, the district court properly dismissed his claims without an evidentiary hearing. See *State v. Jackson*, 255 Kan. 455, 458, 874 P.2d 1138 (1994) (applying procedure for K.S.A. 60-1507 motions while addressing a motion to withdraw a plea under K.S.A. 22-3210).

Affirmed.