NOT DESIGNATED FOR PUBLICATION

No. 114,922

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

NICHOLAS ALLEN WARD,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harper District Court; LARRY T. SOLOMON, judge. Opinion filed August 12, 2016. Reversed and remanded with directions.

*Janis I. Knox*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Lacy J. Gilmour*, of Maize, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and WALKER, S.J.

POWELL, J.:  The State appeals the district court's order granting Nicholas Allen Ward's motion to withdraw his guilty plea and its subsequent *sua sponte* orders suppressing evidence and dismissing the case with prejudice. After pleading guilty to a reduced charge pursuant to his plea agreement with the State, Ward learned that his codefendant successfully suppressed the evidence in her case resulting in its dismissal. This prompted Ward to file a motion to withdraw his plea. The district court not only granted Ward's motion, but also, on its own, suppressed the evidence and dismissed the case with prejudice.

1

We find the district court abused its discretion in allowing Ward to withdraw his guilty plea for two reasons: (1) The court erred as a matter of law by finding that the State's insistence that Ward accept the plea offer prior to knowing the hearing results of his codefendant's motion to suppress was sufficiently coercive to undermine the voluntariness of his plea; and (2) the court erred as a matter of law by finding that not allowing Ward to withdraw his plea after his codefendant's case was dismissed due to the granting of her motion to suppress constituted manifest injustice. Accordingly, we reverse the district court, reinstate Ward's case and his guilty plea, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2015, Ward and his passenger, Ashley Dillman, were stopped in Harper, Kansas, by a Harper County Sheriff's deputy. Dillman, who actually owned the car, eventually told police there were drugs in the vehicle. Law enforcement officers searched the car and discovered suspected methamphetamine, marijuana, and drug paraphernalia in a backpack which Dillman claimed she owned. The State charged Ward with one count of conspiracy to distribute methamphetamine. Dillman was charged in a separate case with possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, unlawful possession of marijuana, two counts of possession drug paraphernalia, and two counts of no drug tax stamp. Ward waived his preliminary hearing, and Dillman filed a motion to suppress.

The State made Ward a plea offer at some point before he was arraigned and agreed to a continuance of his arraignment. Ward's arraignment was scheduled for August 20, 2015, at 9:30 a.m. A few days before the arraignment, defense counsel e-mailed the prosecutor and said it was her understanding that Dillman's motion to suppress had been argued and granted. The prosecutor informed defense counsel that Dillman's

2

suppression hearing was set for 1 p.m. on the same day as Ward's arraignment. The prosecutor also said:

"If your client wishes to wait and see the results and not plead on Thursday, I will withdraw my offer. He must plead on Thursday morning in order to take advantage of the plea offer or it will be deemed automatically withdrawn at the end of the morning docket Thursday AM, August 20, 2015."

On the day of Ward's arraignment, Ward signed the plea agreement, acknowledging that he was pleading guilty to a lesser charge of possession of methamphetamine. The State was granted leave to amend the complaint accordingly. At the hearing, Ward entered a guilty plea, and the State provided the factual basis of the plea. Ward did not dispute the State's factual basis and agreed it was accurate. The district court asked Ward if he understood that by pleading guilty he was giving up his right to challenge the initial stop, the search and/or seizure of any evidence, the right to challenge any statements which were obtained from him, and the right to raise any other legal issues or challenges to this prosecution. Ward acknowledged that he did and indicated that no one was forcing or threatening him to plead guilty. The district court ultimately found that Ward had knowingly, intelligently, and voluntarily waived his constitutional rights and entered a plea of guilty to possession of methamphetamine. Sentencing was scheduled for October 22, 2015.

Later that day, the same judge who accepted Ward's guilty plea heard Dillman's motion to suppress. At the close of the suppression hearing, the district court ordered the parties to submit written briefs by September 21. On October 1, more than 1 month after Ward's guilty plea, the district court granted Dillman's motion and suppressed all evidence resulting from the stop. The State appealed, and another panel of our court recently reversed and remanded. See *State v. Dillman*, No. 114,624, 2016 WL 3460422 (Kan. App. 2016) (unpublished opinion).

3

One day before his sentencing, Ward filed a motion to withdraw his guilty plea. In his written motion, Ward argued that good cause for withdrawal existed because the district court had found that Dillman's constitutional rights had been violated, which meant his constitutional rights had also been violated. At the withdrawal hearing, however, defense counsel began by stating that Ward claimed he had not fully understood their discussion about the plea and his legal options and that Dillman had successfully moved to suppress the evidence in her case. Defense counsel said it would be a travesty for Ward to be convicted when Dillman was not.

The district court apparently agreed. While noting that Ward had not argued in his written motion to withdraw his guilty plea that the plea had not been voluntarily or knowingly made and observing that it would not have otherwise accepted Ward's plea under such conditions, the court found it minimally coercive for the State to require Ward to accept the plea offer before learning of the outcome of Dillman's motion to suppress and found that alone was sufficient grounds for the withdrawal of his plea. The district court also found that not allowing Ward to withdraw his guilty plea when it had found that Dillman's constitutional rights had been violated would be manifest injustice. Then the court, *sua sponte* and without Ward or the State presenting any argument or evidence, incorporated by reference the evidence and rulings from Dillman's suppression hearing, suppressed all the evidence in Ward's case, and dismissed the case with prejudice.

The district court's rationale was based upon the fact that because the two cases were very similar, with Ward perhaps even having a better argument for suppression, there was no need to relitigate issues which had already been litigated in Dillman's case. The State objected and requested an opportunity to address the suppression issue. The court noted the State's objection and denied its request to be heard.

The State timely appeals.

DID THE DISTRICT COURT ERR IN ALLOWING WARD TO WITHDRAW HIS GUILTY PLEA?

The State first claims that the district court should not have allowed Ward to withdraw his guilty plea.

When reviewing a district court's ruling on a motion to withdraw a plea, we apply an abuse of discretion standard of review. *State v. Huynh*, 278 Kan. 99, 101, 92 P.3d 571 (2004). A district court abuses its discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on error fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Judicial discretion can also be abused when it is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. *State v. Ardry*, 295 Kan. 733, 736, 286 P.3d 207 (2012). The State, as the party alleging an abuse of discretion, bears the burden of proof. See *State v. Garcia*, 295 Kan. 53, 61, 283 P.3d 165 (2012). To the extent that interpretation of a statute is required, our review is unlimited. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

K.S.A. 2015 Supp. 22-3210(d) provides:

"(1) A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged.

"(2) To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

Manifest injustice is a stricter standard than good cause. *State v. Macias-Medina*, 293 Kan. 833, 836-37, 268 P.3d 1201 (2012). Generally, "'manifest injustice' [means] obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). The factors that a district court

5

must consider in determining whether a defendant has shown good cause or manifest injustice are "whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see also *State v. Morris*, 298 Kan. 1091, 1100-01, 319 P.3d 539 (2014) (applying *Edgar* factors to postsentence motion to withdraw plea). These factors should not be exclusively and mechanically applied. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

We note the first and third *Edgar* factors are not really in dispute. Neither party disputes that Ward was represented by competent counsel, and, while Ward's counsel made brief oral comments suggesting Ward did not understand the plea agreement, such arguments were not contained in his written motion and the district court found that Ward's guilty plea was knowingly made. The second factor is at issue, and the district court's decision to allow Ward to withdraw his guilty was based on two findings. First, it found that the State's threat to withdraw its plea offer prior to knowing the results of Dillman's suppression motion was sufficiently coercive as to undermine the voluntariness of Wood's plea. Second, even though Ward moved for withdrawal before sentencing, the district court also found that he satisfied the higher manifest injustice standard because "justice, fairness, equity, and the Constitution" required it to set aside Ward's guilty plea since it had found that Dillman's constitutional rights had been violated, meaning Ward's rights had also been violated.

First, we reject the notion that a plea deadline is coercive enough to invalidate a plea. While it is true that all deadlines are by nature minimally coercive, deadlines are also understood to be an acceptable part of the plea bargaining process. The Tenth Circuit Court of Appeals, in a case in which the defendant argued that the time pressure, stress, mental anguish, and depression he experienced during plea discussions rendered his plea involuntary, held that "[a]lthough deadlines, mental anguish, depression, and stress are

6

inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that [the defendant's] plea was involuntary." *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995).

Moreover, we note that the State granted Ward more time to consider the plea offer by agreeing to continue his arraignment. The State also gave Ward's counsel several days' notice that the plea offer would be withdrawn if Ward did not accept it the morning of August 20, 2015, which happened to be the same day Dillman's motion to suppress was being heard. There is simply nothing in the law that required the State to wait until after the district court had ruled on Dillman's suppression motion, which would have extended the plea offer past October 1st, to withdraw its plea offer. Finally, we note that the same factual scenario existed at the time the district court *accepted* Ward's plea— except for knowing the results of Dillman's suppression hearing—and yet the court found it knowingly and voluntarily made. For the district court not to find the plea offer deadline coercive initially and then to reverse itself later strikes us as arbitrary. The district court's finding that the State's deadline was sufficiently coercive as to undermine the voluntariness of Ward's plea was based on an error of law.

Second, we also reject the district court's finding that it would be manifestly unjust not to allow Ward to withdraw his plea in light of the granting of Dillman's motion to suppress which resulted in the dismissal of her case. The district court initially found that Ward voluntarily and knowingly pleaded guilty; therefore, his decision to forego trial was completely his own. The State's evidence may or may not have been tainted, but Ward nonetheless chose to plead guilty based on that evidence. In deciding whether an inmate waived his right to alleged violations of the Fourth Amendment to the United States Constitution in a 42 U.S.C. § 1983 claim by pleading guilty, the United States Supreme Court stated:

7

"'[W]aiver was not the basic ingredient of this line of cases. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established.' [Citation omitted.]" *Haring v. Prosise*, 462 U.S. 306, 321, 103 S. Ct. 2368, 76 L. Ed. 2d 595 (1983).

Because he pleaded guilty, Ward admitted to being factually guilty of the crime, and any alleged Fourth Amendment violation became "irrelevant to the constitutionality of his criminal conviction." 462 U.S. at 322. Finally, we note that if Ward had truly been concerned that his constitutional rights had been violated, he could have filed a motion to suppress just as Dillman did. He did not.

In addition, the district court seemed convinced of the injustice of not allowing Ward to withdraw his plea, meaning his conviction would stand, in light of the fact that his codefendant's case was dismissed because the court had granted her motion to suppress. Again, we reject such a finding because under analogous situations, the federal courts have not allowed defendants to withdraw their pleas after learning that a codefendant had been acquitted. See *United States v. Martinez-Molina*, 64 F.3d 719, 733 (1st Cir. 1995) (defendant's claim of coercion "merely reflected second thoughts about the wisdom of his decision after learning that two codefendants had been acquitted at trial"); *United States v. Picone*, 773 F.2d 224, 226 (8th Cir. 1985) (where codefendant is acquitted, defendant's plea cannot be withdrawn simply because defendant suddenly realizes he might be acquitted); but see *United States v. Schwartz*, 785 F.2d 673, 678 (9th Cir. 1986) (district court did not abuse its discretion in permitting defendant to withdraw his plea in light of codefendants' acquittal and government's lack of evidence). Thus, refusing to allow Ward to withdraw his plea would not have been "obviously unfair or shocking to the conscience."

From the record, it is clear that after Dillman's motion to suppress was granted, Ward regretted his decision to plead guilty. But a mere change of heart is insufficient to establish good cause to withdraw a plea. See *State v. Glover*, 50 Kan. App. 2d 991, 997-98, 336 P.3d 875 (2014), *rev. denied* 302 Kan. 1014 (2015); see also *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008) (defendant should not be able to withdraw guilty plea "simply because he or she determines, in hindsight, that it was not the most intelligent course of action"). For that reason and because both of its findings were based on legal errors, the district court abused its discretion by allowing Ward to withdraw his guilty plea.

Accordingly, we reverse the district court's decision allowing Ward to withdraw his plea, reinstate the case and Ward's plea of guilty, and remand for further proceedings consistent with this opinion. The other issues raised in the State's brief are moot.

Reversed and remanded with directions.