No. 119,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON TERNING,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects defendants in criminal cases by requiring that any plea be knowingly and voluntarily made. As part of this protection, a court considering a defendant's plea of guilty or nolo contendere must inform the defendant of the direct consequences of his or her plea. The record must affirmatively disclose that the defendant understands the potential consequences of the plea and nevertheless chooses to plead guilty or no contest.

2.

Postrelease supervision is a direct consequence of a plea because it is definite, automatic, and immediately follows a period of imprisonment.

3.

Under K.S.A. 22-3210, a court considering a defendant's plea must determine— and the record must affirmatively disclose—that the defendant enters his or her plea voluntarily and with an understanding of its consequences. K.S.A. 2018 Supp. 22-3210(a)(2) thus requires a court to inform the defendant of the consequences of the plea,

including the specific sentencing guidelines level, and the maximum penalty provided by law which may be imposed upon acceptance of such plea.

4.

The decision to deny a motion to withdraw a plea lies within the discretion of the district court. On appeal, a person challenging a district court's denial must establish that the court abused its discretion in reaching that decision.

5.

When a defendant moves to withdraw a plea after sentencing, a court may only permit withdrawal to correct manifest injustice. Manifest injustice is something obviously unfair or shocking to the conscience.

6.

In determining whether a defendant has established manifest injustice in a postsentence motion to withdraw a plea, courts consider a number of factors, including (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.

7.

The failure to strictly comply with K.S.A. 22-3210 does not warrant withdrawal of a plea if, upon review of the entire record, it can be determined that the plea was knowingly and voluntarily made. A court should deny a motion to withdraw a plea, even when faced with an error in the potential sentence discussed at the plea hearing, when the record discloses the plea hearing substantially complied with the requirements of K.S.A. 22-3210.

8.

Kansas law vests district courts with the task of evaluating the defendant's arguments and testimony—and weighing those arguments against the unique facts and circumstances of each case—to determine whether a plea was knowingly and understandingly made.

9.

K.S.A. 2018 Supp. 22-3210(a)(2) requires a court at a plea hearing to inform the defendant of the "maximum penalty provided by law which may be imposed," not the exact sentence that will be imposed at sentencing.

10.

Under the unique facts of this case, the district court did not abuse its discretion in finding the defendant failed to demonstrate he would not have entered his plea if he had been informed that he would be subject to lifetime postrelease supervision. Even though the court did not strictly comply with K.S.A. 22-3210 at the plea hearing, the record supports the district court's finding that the defendant's plea was knowingly and understandingly made.

Appeal from Chautauqua District Court; F. WILLIAM CULLINS, judge. Opinion filed February 7, 2020. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., STANDRIDGE and WARNER, JJ.

3

WARNER, J.:  In 2008, Aaron Terning pleaded no contest to aggravated kidnapping and rape; he was sentenced to two consecutive 165-month prison terms, plus 36 months of postrelease supervision. The parties agree that Terning should have been sentenced to a lifetime term of postrelease supervision, not the 36-month term given. Terning has now moved to withdraw his plea based on that error, claiming he would not have entered his plea if he had known he would be subject to lifetime postrelease supervision following his prison sentence. The district court denied his motion, finding Terning's plea—despite this error—was knowingly and voluntarily made. Under the unique facts of this case, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2007, Terning and Stephen Greger abducted a 14-year-old girl, R.R., from her home. R.R. was washing her brother's truck when Terning came up behind her, knocked her over, pepper-sprayed her, put a ball gag in her mouth and a hood over her head, and tasered and handcuffed her. Terning then dragged R.R. into his truck and took her to a shed at Greger's house, where the pair shackled her to a table and repeatedly raped her. The next morning, Terning and Greger took R.R. out to the woods and chained her up between several trees. Somehow, R.R. was able to escape and fled to a neighbor's house. R.R. identified Greger and Terning as the culprits.

The State initially charged Terning with aggravated kidnapping, two counts of rape, and aggravated sodomy; it later amended the complaint to include only aggravated kidnapping and rape. The State filed a motion for an upward durational departure based on the vulnerability of the 14-year-old victim and the brutality of Terning's conduct.

The morning the case was set for trial, Terning entered into a plea agreement: Terning would plead no contest to the aggravated kidnapping and rape charges; the State would withdraw its upward-departure motion but reserve the right to seek any sentence

4

authorized by the Kansas sentencing guidelines; and Terning would reserve the right to seek a downward departure.

At the plea hearing, consistent with the terms of the plea agreement, the State withdrew its previous motion for an upward durational departure. The district court informed Terning that aggravated kidnapping and rape are severity level 1 person felonies, each carrying a possible punishment of 147 to 653 months in prison, depending on his criminal history score. The court made no mention of any term of postrelease supervision. Terning stated he understood the possible punishment and informed the court he was entering the plea freely and voluntarily. The court accepted Terning's plea. Terning was 37 years old when he entered his plea.

At sentencing, the court denied Terning's motion for a downward departure. The court again informed Terning that each of his convictions carried possible sentences of 147 to 653 months' imprisonment. Though Terning had a criminal history of I because he had no previous criminal record, the court found the grave nature of the crimes necessitated the aggravated sentences within the applicable sentencing box under the guidelines. The court thus sentenced Terning to 165 months' imprisonment for each crime, to be served consecutively, for a controlling term of 330 months (27 years and 6 months) in prison. The court also ordered 36 months of postrelease supervision.

Terning appealed, and the Kansas appellate courts summarily dismissed. But due to various procedural delays in the petition for review process, the mandate was not issued in Terning's direct appeal until May 2017.

That same month, Terning himself filed a pro se motion to correct an illegal sentence under K.S.A. 22-3504, arguing the sentencing court improperly designated aggravated kidnapping as the primary crime and thus sentenced him to an incorrect period of postrelease supervision. Terning stated that he should have received a lifetime

5

term of postrelease supervision under K.S.A. 2018 Supp. 22-3717(d)(1)(G). (The State filed a similar motion in 2015 but withdrew it as premature pending Terning's direct appeal.) After Terning filed his motion in 2017, the State also filed a motion under K.S.A. 22-3504, agreeing that the district court should have sentenced him to lifetime postrelease supervision.

The district court appointed counsel to represent Terning, and in October 2017 Terning moved to withdraw his original plea. He argued that because "[he] was never informed of the lifetime post-release supervision period," his plea was not knowingly and voluntarily made. He also asserted he was innocent of the charges against him.

The district court held a hearing on all pending motions. Terning testified that he was not advised of the mandatory lifetime postrelease supervision before entering his plea, between his plea and sentencing, at the sentencing hearing, or in the journal entry. He stated he was unaware at that time that his plea entailed lifetime postrelease supervision; he believed the postrelease supervision period "was only going to be a couple years . . . and then that would be over." Although Terning noted in his K.S.A. 22-3504 motion that lifetime postrelease supervision is the proper postrelease sanction for rape, he testified that he only learned that fact when he saw the State's motion in 2015.

The district court denied Terning's motion to withdraw his plea. The court agreed that Terning was not told about any postrelease supervision when he entered his plea and that he was told the wrong term of postrelease supervision at sentencing. But the court noted that "[s]entencing imperfections can exist if the entire record shows that the plea was made knowingly and voluntarily." The court observed that Terning was advised at his plea hearing that the maximum penalty for each charge was 653 months in prison and that he was advised in his written plea agreement that the court could order those sentences to be served consecutively. He nevertheless pleaded no contest to both charges.

6

Thus, the court found the error regarding the postrelease term did not prejudice him. In short, "[t]he purposes of K.S.A. 22-3210(a) were fulfilled." Terning appeals.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects defendants in criminal cases by requiring that any plea be knowingly and voluntarily made. *Brady v. United States*, 397 U.S. 742, 755-56, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). As part of this protection, a court considering a defendant's plea of guilty or nolo contendere must inform the defendant of the direct consequences of his or her plea. 397 U.S. at 755-57. And the record must affirmatively disclose that the defendant understands the potential consequences of the plea and nevertheless chooses to plead guilty or no contest. See *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006). The Kansas Supreme Court has held that postrelease supervision is a direct consequence of a plea because it is definite, automatic, and immediately follows a period of imprisonment. *State v. Moody*, 282 Kan. 181, 195-96, 144 P.3d 612 (2006); *State v. Barahona*, 35 Kan. App. 2d 605, Syl. ¶ 7, 132 P.3d 959 (2006).

K.S.A. 22-3210 was enacted to ensure compliance with these elements of due process. *Beauclair*, 281 Kan. at 237; see also *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Under this statute, a court considering a defendant's plea must determine—and the record must affirmatively disclose—that the defendant enters his or her plea voluntarily and with an understanding of its consequences. *Beauclair*, 281 Kan. at 237. K.S.A. 2018 Supp. 22-3210(a)(2) thus requires a court to inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea."

Any effort to withdraw a plea, once entered, is governed by K.S.A. 2018 Supp. 22-3210(d). The decision to deny a motion to withdraw a plea lies within the discretion of the district court. *State v. Green*, 283 Kan. 531, 545, 153 P.3d 1216 (2007). On appeal, a person challenging a district court's denial must establish that the court abused its discretion in reaching that decision. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

K.S.A. 2018 Supp. 22-3210(d) sets forth separate standards for evaluating a motion to withdraw a plea, depending on the timing of the motion. A court may permit a defendant to withdraw a plea "for good cause shown" at any time before he or she is sentenced. K.S.A. 2018 Supp. 22-3210(d)(1). But when a defendant moves to withdraw a plea after sentencing—as Terning has done here—a court may only permit withdrawal "[t]o correct manifest injustice." K.S.A. 2018 Supp. 22-3210(d)(2).

Manifest injustice is something "obviously unfair or shocking to the conscience." *Barahona*, 35 Kan. App. 2d at 608-09. In determining whether a defendant has established manifest injustice in a postsentence motion to withdraw a plea, courts consider the three factors set forth in *State v. Fritz*, 299 Kan. 153, 321 P.3d 763 (2014): "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." 299 Kan. at 154; see also *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016) (noting that while these factors are "'viable benchmarks for judicial discretion,'" courts may examine other considerations as needs arise in a particular case).

Our Kansas Supreme Court has explained that "the failure to strictly comply with [K.S.A. 22-3210] does not warrant [withdrawal of a plea] if, upon review of the entire

8

record, it can be determined that the pleas were knowingly and voluntarily made." *Beauclair*, 281 Kan. at 237. In other words, a court should deny a motion to withdraw a plea, even when faced with an error in the potential sentence discussed at the plea hearing, when "the requirements of [K.S.A. 22-3210] were substantially complied with." 281 Kan. at 241.

*Barahona* considered a circumstance where a defendant had received incorrect information regarding the term of his postrelease supervision (though in the context of a claim of ineffective assistance of counsel). This court held the "failure to advise a criminal defendant of the applicability of a postrelease supervisory period" does not violate due process "if the sentence assigned to the defendant and any mandatory supervised period following his or her release does not exceed the maximum penalty term the defendant was told at sentencing." 35 Kan. App. 2d 605, Syl. ¶ 8. Thus, because the total period of Barahona's imprisonment and postrelease supervision were less than the maximum possible sentence he was advised of at the time of his plea, the court found no due process violation. 35 Kan. App. 2d at 614-15.

Terning was advised at his plea hearing that he faced a potential punishment of 147 to 653 months of incarceration on each charge. Under the sentencing guidelines, the maximum prison term Terning could be sentenced to would be 818 months—or 68 years and 2 months—653 months for rape and 165 months for aggravated kidnapping, not including postrelease supervision. See K.S.A. 21-4720(b)(2), (5) (establishing a base sentence for the primary crime, or the crime with the highest severity ranking, and calculating all nonbase sentences as criminal history I). Terning was 37 years old at the time he entered his plea. If he received a sentence for this maximum term, he could be in prison until he was 105 years old. Thus, though the court did not mention postrelease supervision at the plea hearing, he was informed of a combined incarceration term not meaningfully different from life imprisonment and nevertheless decided to plead no contest to the charges. And even if Terning was aware that his criminal history would

9

reduce his sentence under the sentencing guidelines, Terning knew his sentence could (and in fact did) result in a prison term that would last well into his 60s.

While it is true, as the dissent observes, that Terning's originally imposed sentence was mathematically shorter than an indeterminate term of lifetime postrelease supervision, our caselaw does not demand such a rigid application of *Barahona*. Otherwise, a defendant could automatically withdraw his or her plea whenever a court failed to discuss mandatory lifetime postrelease supervision at the plea hearing—regardless of the defendant's age at the time of sentencing, the potential sentencing range, and the many non-numeric factors a defendant may consider when deciding whether to enter a plea. Instead, Kansas law vests district courts with the task of evaluating the defendant's arguments and testimony—and weighing those arguments against the unique facts and circumstances of each case—to determine whether a plea was knowingly and understandingly made. See *Beauclair*, 281 Kan. at 237. And appellate courts do not substitute our view on appeal; we only reverse a district court's assessment when the court abuses its discretion. *DeAnda*, 307 Kan. at 503; *Green*, 283 Kan. at 545.

Under these circumstances, the district court did not abuse its discretion in finding that Terning failed to demonstrate he would not have entered his plea if he had been informed that he would be subject to lifetime postrelease supervision. That is, even though the court did not strictly comply with K.S.A. 22-3210 at the plea hearing, the record supports the district court's finding here that Terning's plea was knowingly and understandingly made.

We acknowledge that this court reached a different conclusion in *State v. Metzger*, No. 115,056, 2017 WL 2838268 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 992 (2018) (reversing the district court's denial of a motion to withdraw his plea). But in *Metzger*, the defendant was incorrectly advised of a maximum sentence of 443 months' combined incarceration and postrelease supervision (or 36 years and 11

10

months)—a period meaningfully different from the correct mandatory term of lifetime postrelease supervision. 2017 WL 2838268, at *6. And Metzger was sentenced to a controlling prison term of 72 months (or 6 years). 2017 WL 2838268, at *2. Terning faced charges carrying terms of imprisonment nearly twice the maximum duration discussed in *Metzger*. His actual controlling prison sentence is nearly five times as long as Metzger's prison sentence.

Terning argues that it was not possible for him to be sentenced to 653 months in prison for either of the crimes charged since he had a low criminal history score. But K.S.A. 2018 Supp. 22-3210(a)(2) requires a court at a plea hearing to inform the defendant of the "maximum penalty provided by law which may be imposed," not the exact sentence that will be imposed at sentencing. Indeed, a defendant's criminal history score, and thus the narrowed sentencing range under the guidelines that he or she is facing, may not be known at the time a defendant enters into a plea agreement. Or it may change between a defendant's plea and a sentencing hearing. For this reason, other Kansas cases addressing motions to withdraw pleas have dealt with similarly calculated maximum penalties—the maximum sentence permitted under the criminal history category A for each charge, regardless of the defendant's actual criminal history score. See *Beauclair*, 281 Kan. at 232; *Metzger*, 2017 WL 2838268, at *1, 6; see also K.S.A. 2018 Supp. 22-3210(a)(2) (requiring a court to inform the defendant at a plea hearing "of the maximum penalty provided by law which may be imposed upon acceptance of such plea"). So even though Terning may have known his criminal history, the district court was required to advise him, and did advise him, of the maximum potential penalty authorized for each charge.

We also note that when Terning decided to enter his plea, the State had been seeking an upward departure sentence due to the heinous nature of his crimes. Without the plea, Terning could have faced an even longer prison sentence than he was advised of at his plea hearing. In other words, although the court did not strictly comply with K.S.A.

11

22-3210 at the plea hearing by not discussing postrelease supervision, the district court did not abuse its discretion in concluding under these facts that Terning's plea was knowingly and voluntarily entered, and that the purpose of K.S.A. 22-3210 was therefore achieved. Accord *Beauclair*, 281 Kan. at 241.

Even though Terning was unaware of the lifetime postrelease supervision period when he pleaded, he was informed that he was potentially facing a period of incarceration longer than his natural life, regardless of the imposition of any postrelease term. He nevertheless decided to plead no contest to both charges—and, by doing so, he avoided an upward departure that could have resulted in an even longer prison sentence. Under these circumstances, we find the district court did not abuse its discretion in concluding Terning failed to establish manifest injustice requiring withdrawal of his plea.

Affirmed.

\* \* \*

STANDRIDGE, J., dissenting:  I respectfully dissent from the majority's decision to affirm the denial of Aaron Terning's motion to withdraw his plea.

A defendant may withdraw a plea after sentencing only to avoid manifest injustice. K.S.A. 2018 Supp. 22-3210(d)(2). Kansas courts generally consider "manifest injustice" to mean "'obviously unfair'" or "'shocking to the conscience.'" *State v. Kelly*, 291 Kan. 868, 873, 248 P.3d 1282 (2011). In applying that standard to a motion to withdraw a plea, courts consider the *Edgar* factors:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). We then review the district court's decision for abuse of discretion, which occurs only when the

12

decision is based on an error of law or fact or when no reasonable person could agree with it. See *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011).

Terning primarily relies on the third *Edgar* factor, arguing he should be allowed to withdraw his no contest plea to the charge of rape because it was not "freely, knowingly, voluntarily and intelligently made with the full understanding of the consequences thereof." Specifically, Terning claims neither the court nor his counsel told him (and he was otherwise unaware) before he entered his no contest plea to the charge of rape that he would be subject to lifetime postrelease supervision after conviction on that plea. And Terning testified at the hearing on his motion to withdraw plea that he would not have entered his no contest plea but instead would have pled not guilty and taken the case to trial if he had known about the lifetime postrelease requirement.

The question of whether a plea is understandingly made must be addressed in light of the constitutional and statutory rights that attach to a defendant's plea. *Edgar*, 281 Kan. at 36. To be constitutionally valid, guilty or no contest pleas, and their resulting waiver of rights, must not only be voluntary but must also "'be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" 281 Kan. at 36-37 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 [1975]).

Constitutional and statutory requirements dictate that a criminal defendant must be informed of the direct consequences of his or her plea before entering a plea. K.S.A. 2018 Supp. 22-3210(a)(2) (codifying constitutional due process requirement by specifying that in felony cases the district court must inform "the defendant of the consequences of the plea, including . . . the maximum penalty provided by law"). Postrelease supervision is a direct consequence of a plea. *State v. Moody*, 282 Kan. 181, 194, 144 P.3d 612 (2006). Therefore, the district court was statutorily and constitutionally required to inform Terning that he would be subject to lifetime postrelease supervision if he decided to enter

13

a plea of no contest to the charge of rape. See *State v. Barahona*, 35 Kan. App. 2d 605, 613, 132 P.3d 959 (2006).

Although the majority readily acknowledges the district court failed to adhere to the statutory and constitutional mandate set forth in K.S.A. 2018 Supp. 22-3210(a)(2), it concludes the record as a whole establishes that Terning's plea of no contest to the rape charge was knowingly and understandingly made with regard to the maximum penalty that could be imposed as a result of his plea. Immediately before reaching this conclusion, the majority cites to *Barahona*. In that case, Barahona was convicted of robbery and burglary under negotiated guilty pleas. During the first of two plea hearings, the defendant entered a plea of no contest to the robbery charge after the district court advised him that he could potentially serve 31-136 months for a robbery conviction. The district court ultimately imposed a controlling sentence of 36 months for the robbery conviction and 13 months for the burglary conviction, to be followed by a mandatory postrelease supervision period of 24 months. Barahona later filed a motion to withdraw his plea claiming his attorney was ineffective for not advising him of the postrelease supervisory period applicable to his convictions as a result of his plea. Barahona argued his attorney's failure in this regard deprived him of his right to due process of the law. The district court summarily denied the defendant's motion.

Barahona appealed. The court framed the issue on appeal as follows:

> "The defendant also claims that his counsel was ineffective in failing to advise him of the potential postrelease supervisory period applicable to his convictions for robbery and burglary as a result of his plea. The record supports his contention, as it is silent on the issue of the period of postrelease supervision applicable to the defendant's convictions, except within the journal entry of sentencing." *Barahona*, 35 Kan. App. 2d at 613.

Relying on the holdings in several federal cases across various jurisdictions, the *Barahona* court concluded that the defendant was not deprived of his right to due process when his attorney failed to tell him before he entered his plea that he would serve a 24-month term of postrelease supervision. The court reasoned that even if Barahona had served the full 36-month robbery sentence before beginning his 24-month postrelease supervision period, the time served as a result of his guilty plea (50 months) did not exceed the 136-month period of time the court originally told him he could potentially serve before he entered his plea. *Barahona*, 35 Kan. App. 2d at 614-15. The court held that

> "due process is not violated by failure to advise a criminal defendant of the applicability of a postrelease supervisory period or mandatory parole, *if* the sentence assigned to the defendant and any mandatory supervised period following his or her release does not exceed the maximum penalty term the defendant was told at sentencing." *Barahona*, 35 Kan. App. 2d at 614.

Although citing to it, the majority does not actually apply the *Barahona* holding to the facts here, primarily because it would be impossible to do so. In *Barahona*, the court was able to mathematically compare two discrete numbers to determine whether the sentence assigned to the defendant and any mandatory supervised period following his release is less than the maximum penalty term the defendant was told at sentencing. Unlike *Barahona*, the true total possible term of confinement for a rape conviction at the time Terning entered his plea was not a discrete number—it was life imprisonment. That was because in 2006, the Legislature mandated lifetime postrelease supervision for rape convictions. See K.S.A. 2006 Supp. 22-3717(d)(1)(G), (d)(2)(A). The mandatory period of "lifetime postrelease supervision is undeniably part of a defendant's sentence." *State v. Mossman*, 294 Kan. 901, 907, 281 P.3d 153 (2012). Even now, if an offender violates the terms of postrelease supervision, that offender may be required to be confined for up to the balance of postrelease. But at the time of Terning's plea, the relevant time to analyze under *Brady*, if that violation resulted from a new felony conviction, the offender was

15

required to serve the entire balance of the remaining postrelease term, which in Terning's case was a life sentence. See K.S.A. 2007 Supp. 75-5217(c)-(d); *Brady v. United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (counsel must inform defendant of possible penalty existing at the time of the plea).

In order to deal with this factual distinction, the majority does not (and cannot) compare discrete numbers as the science of hard mathematics requires. Instead, the majority applies a newly developed analytical framework, which provides that due process is not violated by failure to advise a criminal defendant of the applicability of a lifetime postrelease supervisory period if the combined prison sentences assigned to the defendant are not *meaningfully different* from life in prison. See slip op. at 9.

Significantly, the majority does not define the term "meaningfully different." As applied here, however, the majority summarily finds that advising a 37-year-old Terning at the plea hearing of a maximum penalty of 818 months (up to 653 months on the base crime assuming a criminal history A and up to 165 months on the nonbase crime based on a criminal history I) is *not* meaningfully different from an actual life sentence. But the majority comes to a different conclusion when analyzing the facts in *State v. Metzger*, No. 115,056, 2017 WL 2838268 (Kan. App. 2017) (unpublished opinion). There, the majority summarily finds that advising a 20-year-old Metzger at the plea hearing of a maximum penalty of 431 months *is* meaningfully different from an actual life sentence.

I strongly disagree with the majority's adoption of this new analytical framework as doing so will open the door to arbitrary decisions. I believe that system-wide stability and continuity is best maintained when this court consistently follows its logical, tried-and-true analytical framework, applying it to all issues in all cases, regardless of the individual result that might obtain in a particular case. Cf. *Leaming v. U.S.D. No. 214*, 242 Kan. 743, 761, 750 P.2d 1041 (1988) (Herd, J., dissenting) ("Result-oriented justice

is government of men and not of law, directly contrary to the concept of the rule of law.").

The better analytical framework is the one set forth in *Metzger*. Before entering no contest pleas to aggravated indecent liberties with a child and indecent liberties with a child, the district court advised Metzger that he would be subject to a maximum penalty of 431 months, which included 48 months of postrelease supervision. At sentencing, the district court imposed concurrent 72- and 32-month prison terms, with 36 months' postrelease supervision. Nearly four years later, the State filed a motion to correct illegal sentence arguing Metzger should have received lifetime postrelease supervision on the aggravated indecent liberties conviction. Like Terning, Metzger filed a motion to withdraw his pleas, which the district court denied. *Metzger*, 2017 WL 2838268, at *1-2. On appeal, Metzger argued his "'right to due process was violated because he was not informed of the maximum penalties his plea entailed.'" 2017 WL 2838268, at *5.

A panel of this court agreed, finding Metzger had demonstrated manifest injustice because he was misinformed about the length of postrelease supervision. The panel found the first and third *Edgar* factors weighed in favor of Metzger:  counsel's improper advice was not competent and his plea was not fairly and understandingly made because he was not correctly informed of the actual maximum possible sentence he faced. 2017 WL 2838268, at *7. In its analysis, the *Metzger* court distinguished *Barahona* because Metzger's total sentence—life due to lifetime postrelease—exceeded the possible sentence he was told he faced at the time he entered his plea.

Although it had found that Metzger's plea was not fairly or understandingly made under the third *Edgar* factor based on the constitutional and statutory violation, the *Metzger* court turned to five additional factors set forth in *State v. Moses*, 280 Kan. 939, 952-54, 127 P.3d 330 (2006), in considering voluntariness:

17

(1) the reasonable promptness of the defendant's motion to withdraw;

(2) the defendant's failure to raise the issue in a prior appeal;

(3) prejudice the State would suffer if forced to try the case after a lengthy period of time;

(4) the defendant's prior involvement in the criminal justice system; and

(5) receipt by the defendant of a favorable plea bargain.

The court found the first and second *Moses* factors favored Metzger, as he promptly moved to withdraw his plea as soon as he learned he was subject to lifetime postrelease supervision. Next, the State cited no particular prejudice if Metzger's pleas were withdrawn. With respect to the fourth factor, Metzger had prior convictions, but none were for person crimes, so it found the third and fourth factors did not favor either party. And to the fifth factor, it found Metzger obtained a favorable plea bargain, as his charges were substantially reduced. What appeared to tip the scales in favor of finding manifest injustice was Metzger's knowledge that he faced potentially greater adverse consequences if he was allowed to withdraw his plea. *Metzger*, 2017 WL 2838268, at *8-9.

The facts here weigh even more heavily in favor of a finding that Terning's plea was not freely, knowingly, voluntarily, and intelligently made with the full understanding of the maximum penalties. Like Metzger, Terning timely moved to withdraw his plea within one year of his conviction becoming final. And like Metzger, neither he, his counsel, nor quite possibly the district court, the State, and his original appellate counsel, was aware he was facing lifetime postrelease, so the issue was not something that could have been raised in his direct appeal. And Terning made clear he would not have entered his plea had he been aware of the lifetime postrelease requirement. Therefore, like Metzger, the first two *Moses* factors weigh in Terning's favor.

18

Next, there does not appear to be any prejudice to the State beyond what existed in *Metzger*. The only possible difference between *Metzger* and Terning's case is that the codefendant in this case may have died. But there is no evidence that testimony would have otherwise been available at the time Terning entered his plea and, even if it was, that it would have been adverse to Terning. Under the fourth *Moses* factor, Terning, unlike Metzger, had absolutely no criminal history and no experience with the criminal justice system; therefore, this factor weighs in his favor.

And finally, regarding the fifth *Moses* factor, I would find Terning did not receive a favorable plea bargain for purposes of a manifest injustice analysis. In *Metzger*, the court found the defendant received a favorable plea bargain which, at first, weighed against a finding of manifest injustice: Metzger was charged with four crimes, the State dismissed two of the charges under the terms of the plea agreement, and the court ultimately sentenced Metzger to concurrent sentences on those two convictions. Nevertheless, the court ultimately was persuaded this factor weighed in favor of a finding of manifest injustice based on the undisputed fact that Metzger was advised of a 36-month postrelease supervision term only to have it later increased to a lifetime period of postrelease supervision. In concluding, the court stated that "Metzger makes a valid point that there is a significant difference between a 36-month postrelease supervision term and a lifetime postrelease supervision term." *Metzger*, 2017 WL 2838268, at *8. On this last *Moses* factor, the court also was persuaded by Metzger's testimony at the hearing on his motion to withdraw his plea, in which he stated he had been fully informed of the potentially adverse consequences of withdrawing his pleas and that his decision was voluntary. 2017 WL 2838268, at *8.

In exchange for Terning's no contest plea, the State agreed to withdraw its motion for an upward durational departure and to not seek any other type of sentencing enhancement. The State agreed that Terning would be permitted to seek a downward departure as well as any sentence authorized under the guidelines, which would include a

19

request for concurrent sentences. The State did not agree, however, to dismiss either of the pending charges, to join in or stand silent on a request for downward departure, to join in or stand silent on a request for concurrent sentences, or to refrain from asking for a consecutive sentence. And, at the sentencing hearing, the court ultimately ordered Terning to serve the aggravated sentences from the applicable Kansas Sentencing Guidelines Act grid-box consecutively, meaning that Terning is serving the maximum possible prison sentence permitted by law. Like Metzger, Terning testified at the hearing below that he was aware that if his plea was withdrawn, he faced the same original charges, none of which had been dismissed, and the State would have the same opportunity to seek an upward durational departure as it originally sought in this case.

In sum, the uncontroverted facts in this case reflect that the district court failed to advise Terning of the maximum penalty upon his no contest plea, which is a clear statutory violation of K.S.A. 2018 Supp. 22-3210(a)(2) and a constitutional violation of due process of law. Upon application of the factors set forth in *Edgar* and *Moses* to the facts of this case, I am persuaded that the balance tips in favor of a finding of manifest injustice under K.S.A. 2018 Supp. 22-3210(d)(2) and would therefore hold the district court erred as a matter of law in its legal conclusion that Terning failed to show the required manifest injustice to withdraw his plea.