(251 P.3d 84)
No. 102,249

STATE OF KANSAS, *Appellee,* v. ROBERT SILHAN, *Appellant.*

Opinion filed April 1, 2011.

*Richard Ney*, of Ney & Adams, of Wichita, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, for appellant.

Before HILL, P.J., GREEN, J., and BUKATY, S.J.

BUKATY, J.: After he was sentenced, Robert Silhan filed a motion to set aside his guilty plea. He alleged two grounds: he did not knowingly, voluntarily, and intelligently enter the plea; and he had ineffective assistance of counsel prior to entering the plea. The district court denied the motion, and Silhan brings this appeal. We conclude the district court did not abuse its discretion and we affirm.

The case arises out of a very tragic accident in which two people died and three suffered significant injuries. The State charged Silhan with two counts of involuntary manslaughter while driving under the influence of alcohol and two counts of aggravated battery after he drove his vehicle on the wrong side of a divided highway and crashed head-on into another vehicle. Two people in the other vehicle were killed and two were seriously injured. Silhan himself suffered serious injuries that apparently required he be placed in a medically induced coma and hospitalized for a significant period. The district court appointed attorney Kevin Smith to represent Silhan. Later at his arraignment he heard the charges against him and the possible maximum sentences. He waived a preliminary hearing and pled not guilty.

More than 3 months later, the district court conducted a plea hearing. Silhan told the court that he had discussed the case with his attorney and wanted to plead guilty. The court advised Silhan that at any time he did not understand a question or statement he could ask for an explanation. The district court thoroughly discussed the rights and consequences of a guilty plea. Silhan signed the following written factual basis and it was presented to the court:

"On April 14, 2006, in Reno County, Kansas, I was operating a motor vehicle while under the influence of alcohol. My blood alcohol was .17, more than double the legal limit of .08. While impaired, I turned onto K-96 on the wrong side of the freeway and crashed into another vehicle. Because of my recklessness, two men in the other vehicle died due to the injuries they sustained in the collision."

The district court found Silhan had voluntarily, knowingly, understandingly, and intelligently waived his constitutional rights in

making his plea and a factual basis existed to support each count of the complaint.

Silhan then filed a motion requesting a dispositional departure to a probation sentence or to probation following an alcohol treatment program and/or serve 60 days in jail. He maintained that: (1) he took full responsibility for his actions in waiving a preliminary hearing and pleading guilty, thereby saving the district court time and sparing the victims the ordeal of a trial; (2) he was 25 years old; (3) he had no criminal history; (4) he had full-time employment; (5) he had completed drug and alcohol treatment and attended Alcohol Anonymous; (6) he was a speaker on drunk-driving prevention; (7) he would receive better treatment outside prison; and (8) he would continue his job in order to pay restitution. Silhan attached 32 letters of reference from citizens attesting to his character and arguing for departure.

The district court heard Silhan's motion a few weeks later. At that hearing, Silhan described his remorse for the accident and his actions. At one point, Smith had to step in because Silhan was unable to continue. After several members of the victims' families spoke, Silhan continued his statement concerning his remorse for his actions and how sorry he was for the accident. He offered the testimony of four people: his college football teammate, his college football coach, his alcohol treatment counselor, and his pastor.

After commenting on the difficult nature of the case, the district court denied the motion for departure and sentenced Silhan to standard presumptive sentences: 41 months on each of the two involuntary manslaughter convictions to run consecutively, and 8 months on each of the two aggravated battery convictions to run concurrent with each other and concurrent to the involuntary manslaughter sentences (a controlling sentence of 82 months).

Silhan appealed both his sentences and the denial of the motion for departure. The Court of Appeals affirmed, finding that Silhan had received a presumptive sentence and the court was without jurisdiction to hear the arguments. See State v. Silhan, No. 98,887, unpublished opinion filed December 5, 2008.

Approximately 1 month after this court's opinion and almost 2 years after the guilty plea, Silhan obtained a new attorney, Richard

Ney. He then filed a motion to withdraw his plea pursuant to K.S.A. 22-3210(d) in order to correct a manifest injustice. Silhan claimed he did not knowingly, intelligently, and voluntarily enter his plea because of his low cognitive abilities. He also claimed that the plea resulted from ineffective assistance of his plea counsel, Kevin Smith. After an evidentiary hearing, the district court denied Silhan's motion.

In this appeal, Silhan makes the same arguments he made below and urges that the district court erred in not setting aside the plea.

A district court considering a timely motion to withdraw a plea after sentencing may set aside a judgment of conviction and permit a defendant to withdraw a plea to correct manifest injustice. K.S.A. 22-3210(d)(2); *State v. Edwards*, 290 Kan. 330, Syl. ¶ 1, 226 P.3d 1285 (2010). The appellate court has defined "manifest injustice" as "something obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). On appeal, we review a district court's denial of a postsentencing motion to withdraw a plea under an abuse of discretion standard. *Edwards*, 290 Kan. 330, Syl. ¶ 2. Under this standard, Silhan has the burden to show that the district court's action was arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the court, then the court did not abuse its discretion. See *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009).

## Knowing and Voluntary Nature of the Plea

K.S.A. 22-3210 sets out the requirements for accepting a guilty plea before or during a trial in order to ensure the plea meets constitutional standards:

"(1) The defendant or counsel for the defendant enters such plea in open court; and

"(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

"(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

"(4) the court is satisfied that there is a factual basis for the plea."

To be constitutionally valid, a guilty plea and the inherent waiver of rights " 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *State v. Edgar*, 281 Kan. 30, 36-37, 127 P.3d 986 (2006) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 [1975]). The term "voluntary" implicitly requires that the defendant be competent. See *Van Dusen v. State*, 197 Kan. 718, 722-25, 421 P.2d 197 (1966).

K.S.A. 22-3301(1) states: "[A] person is 'incompetent to stand trial' when he [or she] is charged with a crime and, because of mental illness or defect is unable: (a) to understand the nature and purpose of the proceedings against him [or her]; or (b) to make or assist in making his [or her] defense."

" '[I]f the accused is capable of understanding the nature and object of the proceedings going on against him [or her]; if he [or she] rightly comprehends his [or her] own condition with reference to such proceedings, and can conduct his [or her] defense in a rational manner, he [or she] is, for the purpose of being tried, to be deemed sane, although on some other subject his [or her] mind may be deranged or unsound.' [Citation omitted.]" *Van Dusen*, 197 Kan. at 722-23.

It is against the backdrop of these legal principles that we review the evidence presented at the hearing on the motion to withdraw the plea.

It appears that Silhan relies primarily upon the testimony of Dr. Marilyn Hutchinson, a psychologist who had examined, tested, and evaluated him. Highly summarized, she opined at the hearing on the motion to withdraw the plea that Silhan suffered from Attention Deficit Hyperactivity Disorder, was in the special education program in school, his IQ was considered low average, he scored in the 10th percentile for the ability to take and apply instructions, his verbal learning was in the 2nd percentile, and he scored in the .01 percentile for recognition memory. She stated that Silhan showed mild impairment in his ability to understand the role of judge, attorney, prosecutor, and defense counsel and no impairment in his ability to participate from an emotional standpoint, such as trusting his lawyer, being willing to go forward, and un-

derstanding the serious nature of the charges. However, she testified Silhan showed significant impairment in the reasoning section of the tests as far as his ability to choose between going to trial or taking a plea. Dr. Hutchinson testified that Silhan's scores aligned him much closer to the group of people found incompetent to go to trial.

Dr. Hutchinson further concluded that if Silhan received verbal instructions from his attorney, he would not remember 15 minutes later what he had been told and his ability to understandingly and intelligently enter a guilty plea was severely compromised. She opined that Silhan did not understand the nature of the plea hearing and that his "Yes, sir" answers were nothing more than statements of an extremely polite and scared young man. On cross-examination, Dr. Hutchinson stated that her interview with Silhan was just over 3 hours in length and that her associate spent 5-6 hours administering the tests.

Ney also called Smith to testify at the hearing. Smith stated, again highly summarized, that he had represented Silhan from the time he was released from the hospital after the accident through the filing of the first notice of appeal, and that Silhan had been in special education through school. He stated that he entered plea negotiations with the prosecutor, but the prosecutor would not reduce any of the charges. Smith testified he met with Silhan probably a dozen times and never felt that Silhan did not understand his questions, nor did he ever have any concerns about Silhan's competency. Smith stated he discussed every aspect of a plea along with Silhan's possible sentence based on the sentencing range for the involuntary manslaughter convictions.

The district court, apparently also at the hearing, again viewed a DVD that Silhan had made after the accident and prior to sentencing as part of his efforts to reach out to others about the serious consequences of drinking and driving. The court had previously viewed it at the time of sentencing in connection with Silhan's motion for a departure. In the video Silhan talks about his serious injuries that he will live with for the rest of his life and how remorseful he is that he drove while intoxicated and caused the deaths of two people and injuries to others. We likewise have

viewed the video and it shows a very articulate and well-spoken young man seemingly fully aware of what he had done and what had happened as a result.

In sum, the record here reflects there was never a concern raised about Silhan's competency by the district court, Silhan himself, his family, his plea counsel, or anyone else connected to the case until after well after he was sentenced and his motion denied. It was only after Ney entered the case that the issue was raised. Even then, Silhan never took the stand to testify he had not understood the nature of the charges or the consequences of his plea. He never refuted the Smith's testimony about their conversations. He never refuted the statements he made in the DVD prior to entering his plea about the consequences of his actions. The same judge who denied the motion to set aside the plea had presided over many of the prior proceedings in the case, including the actual entry of the plea. That judge had ample opportunity to observe Silhan. We find no abuse of discretion in the determination that Silhan was competent to enter his plea.

Silhan also challenges the district court's failure to inform him at the plea hearing of the maximum sentence that could be imposed, as required by K.S.A. 2005 Supp. 22-3210(a)(2). It appears that he never raised the issue to the court. Consequently, Silhan runs up against the general rule that an issue not raised before the trial court cannot be raised on appeal. See *State v. Harned*, 281 Kan. 1023, 1044, 135 P.3d 1169 (2006). Indeed, our appellate courts have, at times, refused to consider a defendant's claim raised for the first time on appeal that the trial court failed to comply with the requirements of 22-3210. 281 Kan. at 1044 (citing *State v. McDaniel*, 255 Kan. 756, 765-66, 877 P.2d 961 [1994]).

Even if we were to consider the argument, the transcript of Silhan's plea withdrawal hearing reveals that any failure by the district court to strictly comply with K.S.A. 22-3210(a)(2) was harmless. See *Edgar*, 281 Kan. at 37 (holding that a failure to strictly comply with the requirements of K.S.A. 22-3210[a] may be harmless error if a review of the entire record shows the guilty plea was knowingly and voluntarily made unless the noncompliance results in the defendant not understanding the nature of the charge

or the consequences of entering the plea). Silhan was advised at the first appearance of the maximum penalties. Smith testified he had repeatedly met with Silhan and discussed every aspect of pleading guilty and his possible sentence based on the sentencing range applicable to the involuntary manslaughter convictions. At the plea hearing, Silhan answered in the affirmative to the court's question of whether he knew the sentence that he could receive. Silhan never testified that he was misinformed of the potential sentence.

## Ineffective Assistance of Counsel

In order for a plea to be set aside based upon allegations of ineffective assistance of counsel, a defendant must establish two things: that counsel's performance fell below the standard of reasonableness, and that a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty or no contest and would have insisted on going to trial. See *State v. Adams*, 284 Kan. 109, 118, 158 P.3d 977 (2007). Again, our review is limited to determining whether the district court abused its discretion in denying a motion to withdraw a plea. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009) ("We have repeatedly said that the denial of a post-sentencing motion to withdraw a plea lies within the trial court's discretion, and an appellate court should not disturb that ruling absent an abuse of discretion.").

Silhan argues on appeal that Smith was ineffective in three respects: first, failure to insure that Silhan was competent; second, failure to understand the causation element of involuntary manslaughter and then advise Silhan accordingly; and third, coercing and misleading Silhan.

As to Silhan's competency, we have already concluded that the district court did not abuse its discretion in finding that the evidence Silhan presented failed to establish he lacked the competency to enter a plea. Additionally, Smith understood that Silhan had been in special education but that he also was a college student. Neither Silhan nor any of his family gave any indication that he did not understand the charges or the consequences of a plea. The

DVD made by Silhan certainly gives credence to Smith's testimony that he never had cause to question Silhan's competency.

The second allegation in Silhan's ineffectiveness of counsel argument arises from the fact that the driver of the other car, who died as a result of the accident, was apparently intoxicated and speeding. There was evidence that his blood alcohol level was .12 and he was possibly driving 80 miles per hour when the speed limit was 70. From this, Silhan asserts he may have had a possible defense to the involuntary manslaughter charges based upon a lack of probable cause between Silhan's conduct and the deaths and injuries sustained by the occupants in the other vehicle. He argues that Smith misunderstood that the prosecutor had to prove the existence of probable cause even though a victim's contributory negligence may not provide an affirmative defense to the charges. He further argues Smith should have investigated this possibility by consulting with an accident reconstruction expert and then advising Silhan of the law and its possible application to the facts of this accident prior to the plea.

We agree that the prosecutor had the burden to prove that Silhan's conduct constituted the requisite probable cause for the deaths and injuries of the victims. See *State v. Chastain*, 265 Kan. 16, 24, 960 P.2d 756 (1998); *State v. Gordon*, 219 Kan. 643, 653, 549 P.2d 886 (1976). However, under the record here, we are not convinced that Smith misunderstood this or failed to investigate it as a possible defense. Smith testified he was aware the other driver was possibly speeding and had a blood alcohol level over the legal limit and that he discussed this with Silhan and his family. He further testified that he discussed with them the hiring of an expert on accident reconstruction but ultimately it was decided not to put the victim's family through any further trauma that a trial might cause.

More importantly, we fail to see that there is a real possibility that a jury would have found the decedent driver's conduct to be the probable cause of the accident as opposed to that of Silhan under the facts here. While the decedent may have been speeding 10 miles per hour over the limit and had a blood alcohol level of .12, he was driving in his proper lane and not exhibiting any other

erratic or impaired driver traits. In contrast, Silhan was driving the wrong way on a divided highway with a blood alcohol level of .17, twice the legal limit. Clearly, the accident happened due to this conduct. It appears it would not have occurred had Silhan not been drinking and then driving in the wrong lane on the wrong side of a divided highway. There is nothing in the record to suggest the deceased driver's speeding or drinking contributed to causing the accident. We fail to see that Silhan had a viable defense based on any conduct of the deceased driver.

For his third allegation of ineffective assistance of counsel, Silhan claims Smith misled and improperly coerced him to plead guilty by telling him the district court would punish him with a harsher sentence if he went to trial instead of pleading guilty.

When evaluating an attorney's performance, a court must view the representation in light of knowledge a reasonable attorney possessed, or should have possessed, at the time of the performance in question. *State v. Barahona*, 35 Kan. App. 2d 605, Syl. ¶ 4, 132 P.3d 959 (2006). The court in *State v. Hernandez*, 227 Kan. 322, 328, 607 P.2d 452 (1980), stated:

"Wisdom gained through hindsight cannot be used to gauge effectiveness of counsel. In retrospect, the possibility that some strategy or procedure, different from that used by the accused's lawyer, might have brought about better results for the accused, is wholly insufficient to sustain a claim of ineffective assistance of counsel."

The record here reflects that Smith advised Silhan that it would be best for him to plead guilty to the charges and throw himself on the mercy of the court in the hopes the court would take that into consideration in sentencing. We find nothing unreasonable about the advice. Here it appears that Silhan had no defense to the charges that had any likelihood of success before the court or a jury. He could not reasonably dispute that he drove on the wrong side of a divided highway without any justifiable reason while intoxicated and hit another car head-on, causing the deaths of two people and injuries to two others. Had he contested the charges by going to trial under these facts, it is reasonable to think a sentencing judge might take this as a failure to accept responsibility for his actions, which then might merit a more severe sentence.

Here, Smith had a valid and reasonable strategy and advised Silhan accordingly. While the outcome was not what either counsel or the client desired, that does not equate to a finding that counsel's performance fell below the standard of reasonableness.

While it is not necessary that we discuss the second prong of an ineffective assistance of counsel claim since Silhan has not established the first, we will note, however, that Silhan has also failed to establish that second prong. Nothing in the record suggests there was a reasonable probability that, but for Smith's alleged errors, Silhan would not have pled guilty and insisted on going to trial. Again, based upon the record before us, he simply had no viable defense to the charges and it is highly unlikely he would have gained any benefit in going to trial.

In summary, none of Silhan's allegations establish that Smith's performance fell below a standard of reasonableness. Nor has Silhan established the second prong required in an ineffective assistance of counsel claim. The district court did not abuse its discretion in denying the motion to set aside the plea based upon such a claim.

Affirmed.