NOT DESIGNATED FOR PUBLICATION

No. 123,730

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OURAY MARCEAUX GRAY,
*Appellant*.


MEMORANDUM OPINION


Appeal from Barton District Court; CAREY L. HIPP, judge. Opinion filed March 25, 2022. Reversed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., ATCHESON and HURST, JJ.


PER CURIAM:  Defendant Ouray Marceaux Gray has appealed the Barton County District Court's denial of a motion his trial lawyer filed to withdraw a guilty plea he entered to a felony drug charge as part of a sweeping disposition of his criminal liability in several matters. Based on the grounds stated in the motion, Gray's lawyer had an apparent conflict of interest in arguing the issue in the district court. Gray, however, had the right to conflict-free representation—a right that was not scrupulously protected in this circumstance. We, therefore, remand to the district court with directions to appoint a conflict-free lawyer to advise Gray about the ramifications of the motion to withdraw and to then go forward in accordance with Gray's well-informed decision on how best to proceed.

1

FACTUAL AND PROCEDURAL HISTORY

During a traffic stop, a Great Bend police officer searched Gray, who was a passenger in the vehicle, and discovered marijuana, counterfeit currency, and three plastic baggies containing small amounts of methamphetamine. The State charged Gray in May 2020 with possession of between 1 and 3.5 grams of methamphetamine with the intent to distribute, possession of marijuana with the intent to distribute, no tax stamps for those illegal drugs, and counterfeiting. Gray was on probation in other cases and faced possible prosecution on additional charges unrelated to the traffic stop. In short, Gray was caught up in a tangled legal predicament. Moreover, he wanted to get out of jail to attend to his ailing grandfather.

Gray's court-appointed lawyer quickly worked out an arrangement with the prosecution calling for Gray to plead guilty to the two possession with intent drug charges without a specific plea recommendation from the State. The State agreed to drop the remaining three charges, not to file new charges against Gray, and to seek his discharge from probation without additional jail time in the other cases. The deal included a joint recommendation to the district court for a personal recognizance bond, allowing Gray to be promptly released from jail after entering the pleas.

During a hearing on June 12, the district court accepted Gray's guilty pleas in conformity with the agreement and approved a personal recognizance bond for Gray. The State dismissed the other charges. Pertinent here, to support the factual basis for the pleas, the State proffered the charging affidavit from the arresting officer stating that the three plastic bags contained about 2 grams of methamphetamine. In response to a question from the district court, Gray's lawyer acknowledged the sufficiency of the proffer.

On August 26, before sentencing, Gray's lawyer filed a motion asking that Gray be allowed to withdraw his guilty plea to the methamphetamine charge. The motion recited that the officer's affidavit and the other information available at the time of the plea indicated Gray had approximately 2 grams of methamphetamine, thereby establishing the factual predicate for a conviction based on possession of between 1 and 3.5 grams. The motion further recited that Gray's lawyer learned that a copy of a report from the KBI lab filed on August 18 showed that two of the plastic bags contained a total of .42 grams of methamphetamine. Based on the report, the motion represented the total amount of methamphetamine was less than 1 gram and, in turn, insufficient to establish an element of the crime of conviction.

The motion identified what are commonly known as the *Edgar* factors that guide a district court in considering a motion to withdraw a plea under K.S.A. 2020 Supp. 22-3210(d):  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. See *State v. Adams*, 311 Kan. 569, 575, 465 P.3d 176 (2020); *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). After outlining the legal bases for withdrawing a plea, the motion concluded Gray "would argue he was substantially misled and the plea was not fairly made" because of the discrepancy in the weight of the methamphetamine. Gray sought to withdraw his plea and to go to trial on the methamphetamine charge.

The district court held a hearing on the motion on December 7, 2020, and for reasons that are neither readily apparent nor of significance to this appeal, Gray was then in custody. At the outset, the district court asked Gray if he was satisfied with his lawyer's representation and wished to have the lawyer continue representing him. Gray answered affirmatively. But the lawyers and the district court did not suggest, let alone discuss, whether there might be a conflict of interest between Gray and his lawyer given the *Edgar* factors and the grounds articulated in the motion.

Neither Gray's lawyer nor the prosecutor presented evidence during the hearing and simply argued their respective positions to the district court. They did not touch on the advice Gray received from his lawyer in advance of pleading guilty and in particular what discussion (if any) they had about the quantity of methamphetamine and the State's evidence supporting the amount.

Rather, Gray's lawyer submitted that because the KBI lab report undermined the factual basis for the charge—there was less than 1 gram of methamphetamine—Gray should be allowed to withdraw the plea. The prosecutor agreed the amount of methamphetamine in the three plastic bags was less than 1 gram. But the prosecutor argued Gray knew how much methamphetamine he had and entered into a plea agreement conferring material benefits on him, so he failed to demonstrate good cause to withdraw his plea. Picking up on those arguments, the district court denied Gray's motion.

At a hearing about 6 weeks later, the district court sentenced Gray to 59 months in prison on the methamphetamine conviction and 49 months in prison on the marijuana conviction to be served consecutively followed by postrelease supervision for 36 months. Those reflect presumptive guidelines sentences, given Gray's criminal history. Gray has appealed.

LEGAL ANALYSIS

On appeal and now represented by the Appellate Defender's Office (ADO), Gray challenges the district court's denial of his motion to withdraw his plea to the methamphetamine charge on two bases. The ADO reprises the point his trial lawyer presented to the district court:  The plea was legally deficient because the drug quantity was less than the required 1-gram threshold for the crime of conviction. Alternatively, the ADO argues the trial lawyer had an apparent conflict of interest in representing Gray at

4

the motion hearing and we, therefore, should remand for a new hearing with a conflict-free lawyer.

As we have already indicated, we find the latter argument well-taken, although we think the proposed remedy is too narrowly focused and may not necessarily advance Gray's best interests. We first address that point and then explain why the plea was not categorically deficient based on the weight of the methamphetamine.

*Conflict-free Representation*

A bedrock principle of our criminal justice system requires that defendants charged with felonies be afforded legal representation at every critical stage of the State's prosecution of them. *State v. Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014). The Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights require nothing less. A hearing on a defendant's motion to withdraw his or her plea before sentencing is such a stage. *State v. Taylor*, 266 Kan. 967, 975, 975 P.2d 1196 (1999); *State v. Toney*, 39 Kan. App. 2d 1036, 1040, 187 P.3d 138 (2008). But it is not enough that those defendants have lawyers standing beside them. The lawyers must be both competent and free of any conflict that would materially diminish their advocacy because of self-interest or some other ulterior consideration. *Sharkey*, 299 Kan. at 96; *Toney*, 39 Kan. App. 2d 1036, Syl. ¶ 3. A district court has a duty to police potential conflicts of interest impinging on a criminal defense lawyer's representation and, in turn, to take steps to eliminate them. *Taylor*, 266 Kan. at 975.

Given the assertions in the motion Gray's lawyer filed to withdraw the plea and the standards for assessing that kind of request, the circumstances here at the very least generate the appearance of a conflict. But those circumstances went unacknowledged and unaddressed in the district court. As a result, we cannot confidently conclude from this record that Gray received the sort of conflict-free representation constitutionally due

criminal defendants. In turn, we are obligated to do what is necessary to rectify that lack of clarity.

Under K.S.A. 2020 Supp. 22-3210(d)(1), a defendant may withdraw a plea before sentencing for good cause and in the district court's discretion. As we have said, the judicial inquiry is guided by the *Edgar* factors, augmented by other considerations relevant in a given case. *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (*Edgar* factors establish a sound benchmark but do not preclude additional considerations.). The *Edgar* factors are not entirely segmented and tend to overlap. For example, the competence of a defense lawyer's representation in a case may (and often will) affect whether a defendant has been left uninformed or misled about material factual and legal matters relevant to the decision to enter a plea rather than going to trial. See *State v. Gwyn*, No. 122,501, 2021 WL 2483107, at *3 (Kan. App. 2021) (unpublished opinion) ("Here, as in many cases, the *Edgar* factors tend to overlap.").

Gray entered a quick plea deal (resolving several fairly distinct legal problems and securing his prompt release from jail) apparently without any firm evidence about the quantity of methamphetamine supporting the possession with intent charge. As Gray points out on appeal, possession of less than 1 gram of methamphetamine with an intent to distribute is a less serious offense and carries a less severe presumptive sentence. See K.S.A. 2020 Supp. 21-5705(d)(3). The motion to withdraw the plea states Gray was "substantially misled" when he pleaded guilty. But the motion is less than forthcoming about why. If Gray's trial lawyer failed to discuss the implications of the difference in weight and the lack of definitive evidence establishing the weight with Gray before he pleaded guilty, that would have contributed to his being misled. And it would implicate the first *Edgar* factor bearing on the competence of the representation, thereby supporting Gray's request to withdraw his plea.

But if that's what happened, Gray's lawyer had a conflict of interest. To support the motion, the lawyer would have had to argue and present evidence that he failed to fully advise Gray about material aspects of the plea. We typically cannot and do not expect lawyers to argue their own incompetence—both the conscious and implicit pull of self-interest would predictably dull the razor's edge of constitutionally effective advocacy. See *Toney*, 39 Kan. App. 2d at 1041; *State v. Kebert*, No. 116,610, 2018 WL 2271417, at *4 (Kan. App. 2018) (unpublished opinion); *State v. Copeland*, No. 109,600, 2014 WL 702526, at *7-8 (Kan. App. 2014) (unpublished opinion).

The appellate record presents us with an enigma. The motion to withdraw creates the appearance of conflict of interest, and nothing in the district court record dispels the appearance. How Gray's lawyer argued the motion is equally inscrutable. The lawyer did not have Gray testify about the legal advice he received (or didn't receive) about the plea deal before entering his plea. That might be because the lawyer fully informed Gray, and the testimony would not have advanced the motion. Or it might be because the lawyer didn't want to expose his own deficient performance.

The appellate courts have recognized that when a defendant in a criminal case has articulated a dissatisfaction with a lawyer appointed to represent him or her, the district court typically should make a preliminary inquiry to find out if the complaint rests on some colorable legal foundation. See *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014) (potential conflict of interest on part of defense counsel triggers duty of district court to inquire). Here, the circumstances were different. Gray had voiced no complaints about his lawyer. Rather, the problem arose from the face of the motion to withdraw and likely would have escaped the notice of even discerning defendants untrained in the law. But the district court was obligated to address what seems to be an obvious potential conflict of interest apparent from the motion itself. See *Sharkey*, 299 Kan. at 98 (Faced with an apparent conflict of interest on defense counsel's part, the district court has a duty

to deal with the issue, and the failure to do so is an abuse of discretion.); *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013).

Had the district court recognized and attempted to address the apparent conflict, we question whether the issue could have been handled by simply asking Gray and his lawyer about the representation. The district court likely would have had to plumb in depth the attorney-client communications leading up to the plea, turning the district court into both inquisitor and decision-maker. See *Brown*, 300 Kan. at 578 (case remanded to district court with directions to appoint conflict-free counsel to represent defendant in his request for new lawyer and possible conflict of interest on part of original lawyer); *Kebert*, 2018 WL 2271417, at *6. And Gray could not have questioned his lawyer, marshalled evidence, or otherwise effectively advocated for himself—conduct requiring preparation and legal training to perform in all but a rudimentary way.

As a nonlawyer, Gray was in no position to recognize the potential conflict or to object to going forward with the hearing under the circumstances. Likewise, the district court's short colloquy with Gray at the start of the hearing about his satisfaction with his lawyer was insufficient to inoculate the proceedings against the pernicious effects of an actual conflict of interest. Gray's affirmation of satisfaction was neither a valid waiver of any conflict nor an informed consent to the conflict. Cf. *Brown*, 300 Kan at 577 (defendant personally filing motion for new lawyer may make informed and voluntary decision to withdraw request); *State v. Silhan*, 45 Kan. App. 2d 574, 579, 251 P.3d 84 (2011) (guilty plea and waiver of attendant constitutional rights must be voluntarily, knowingly, and intelligently made); see also Kansas Rules of Professional Conduct 1.7(a)(2) (2022 Kan. S. Ct. R. at 342) (conflict if lawyer's representation of client substantially limited by "personal interest of the lawyer"); KRPC 1.7(b)(4) (continued representation in the face of conflict requires "informed consent" of client, often entailing independent legal advice). Although the rules of professional conduct do not directly

8

establish standards governing civil and criminal litigation, they may inform issues arising in those proceedings. See *Toney*, 39 Kan. App. 2d at 1043.

Because we cannot conclude Gray was represented by a conflict-free lawyer in the hearing on the motion to withdraw his plea, we are constrained to remand this case for further proceedings. On appeal, Gray has requested we direct the district court to appoint a conflict-free lawyer for him and to then hold a new hearing on the motion to withdraw the plea. We agree the district court should appoint a new lawyer to advise Gray on whether to withdraw his plea. But we do not believe we should order a mandatory rehearing of the motion.

We are now 14 months past the original hearing. Gray may view his circumstances differently now than he would have then. The overall plea arrangement with the State had multiple components and benefits for Gray. After being fully advised about the ramifications of withdrawing his plea, Gray might now be disposed to abandon the motion, proceed with the original motion, or broaden the scope of the motion. We should not impose one of those options on him at this juncture. In the interests of clarity and completeness, however, we point out that any hearing on the present motion or some amended version of it should be treated as a presentencing request under K.S.A. 2020 Supp. 22-3210(d)(1), even though Gray has now been sentenced.

*Withdrawal of Plea for Lack of Factual Basis*

As he did in the district court, Gray argues his plea to possession of 1 to 3.5 grams of methamphetamine with the intent to distribute cannot stand as a matter of law because he actually had less than 1 gram and clear evidence of the amount came to light after the plea but before sentencing. We are unpersuaded, given the circumstances of Gray's prosecution coupled with the various legal fictions the courts routinely tolerate in plea bargains.

9

We assume that Gray, in fact, had less than 1 gram of methamphetamine when he was arrested, and, for whatever reason, the arresting officer overstated the amount in the charging affidavit and his report of the encounter. The State candidly admitted as much at the hearing on Gray's motion to withdraw his plea. We, therefore, credit and rely on that admission in framing the issue.

But the categorical rule Gray propounds doesn't exist—at least in Kansas law—and it runs afoul of the conventions typically accepted in plea bargains. Judge Atcheson has outlined the conventions this way:

> "The criminal justice system depends on plea bargaining as a means of disposing of the vast majority of cases. Without those agreements and the resulting dispositions, the system would collapse from the sheer volume of trials and the time and resources they would consume. Plea bargains typically call for a defendant to plead guilty or no contest in exchange for the State agreeing to a reduction of the charged crimes to less serious crimes, the dismissal of some charged crimes, a recommendation to the district court for less than the maximum sentence, or some combination of those benefits.

> "Successful plea bargains often depend upon one or more legal fictions to arrive at deals mutually acceptable to the prosecution and the defense and tolerable to district courts. Legal fictions are strange creatures. They populate the law with conventions or understandings that aren't really true but are accepted because they smooth out processes that would otherwise be at least cumbersome and perhaps unworkable. A legal fiction has been defined as '[a]n assumption that something is true even though it may be untrue . . . to alter how a legal rule operates.' Black's Law Dictionary 1031 (10th ed. 2014).

> "Plea bargaining regularly relies on three legal fictions. In the first fiction, the prosecutor and the defendant agree to a plea to an amended statutory crime that doesn't particularly fit the facts of what the State contends actually happened but carries a lesser punishment than the original charge. See, e.g., *State v. Wieland*, No. 114,900, 2017 WL 657999, at *3 (Kan. App.) (unpublished opinion) (defendant pleaded guilty to two counts of attempting to possess child pornography, a form of sexual exploitation of a child

10

violating K.S.A. 2012 Supp. 21-5510[a][2], when he actually had child pornography on his smartphone), *rev. denied* 306 Kan. 1331 (2017). The second fiction comes into play when the defendant pleads guilty to a lesser offense that amounts to a legal impossibility—typically an attempt to commit certain statutory crimes. The particular mental intent required for attempts cannot exist simultaneously with the particular mental state or mens rea for some crimes. That conflict prevents a defendant from truly having the state of mind necessary to be guilty of an attempt to commit those crimes, rendering such a charge a 'legal impossibility.' See, e.g., *McPherson v. State*, 38 Kan. App. 2d 276, 280, 163 P.3d 1257 (2007) (defendant properly permitted to plead to attempted unintentional second-degree murder even though crime requires mental state that cannot legally exist). Attempts typically are punished less severely than the completed crimes, so the defendant realizes a benefit. See K.S.A. 2018 Supp. 21-5301(c)(1). In the third fiction, a defendant pleads guilty to a statutory crime to accept an advantageous plea bargain while maintaining his or her innocence in what is commonly known as an *Alford* plea. See *State v. Case*, 289 Kan. 457, 460-61, 213 P.3d 429 (2009); see also *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)." *State v. Pollman*, 56 Kan. App. 2d 1015, 1042-43, 441 P.3d 511 (Atcheson, J., dissenting), *rev. granted* 310 Kan. 1069 (2019), *dismissed as moot* March 23, 2021.

Judge Atcheson described the legal fictions in the context of a defendant disposing of a single criminal charge, but they apply here as well. As part of a broad disposition of charges, potential charges, and probation violations, Gray worked out an arrangement that called for him to plead to a crime that amounted to a legal fiction (and to a second one that didn't) to secure a discernable overall benefit. A negotiated bargain with valuable consideration flowing to the defendant is legally sufficient to support a plea if the defendant has otherwise made a well-informed decision to accept the deal. See *McPherson v. State*, 38 Kan. App. 2d 276, 285, 163 P.3d 1257 (2007); *State v. Wieland*, No. 114,900, 2017 WL 657999, at *3 (Kan. App. 2017) (unpublished opinion).

Gray largely rests his contrary position on a passage lifted from *State v. Green*, 283 Kan. 531, 547, 153 P.3d 1216 (2007), to the effect that a district court may permit a

11

defendant to withdraw a plea if newly discovered evidence undermines the factual basis for the resulting crime of conviction. The court made its point this way:

> "It is obvious that, if new evidence disproves an element of a crime, then the factual basis for a guilty or nolo contendere plea to the charge of committing that crime is undermined. It is a defendant's burden to prove that the factual basis of a plea is so undercut by new evidence that the prosecution could not have proved its case beyond a reasonable doubt. In such a situation, the court may permit withdrawal of the plea and may set aside the resulting conviction . . . ." 283 Kan. at 547.

First, of course, the *Green* court did not enunciate a rule mandating that a district court grant a motion to withdraw based on such new evidence. The decision remains a permissive one entrusted to the district court's sound discretion considering all of the case specific circumstances. The *Green* court cited and did not retreat from an earlier decision affirming the district court's denial of a motion to withdraw a plea despite new evidence when the defendant's plea was "informed and voluntary" and the evidence "did not exonerate" the defendant. 283 Kan. at 546 (citing *State v. Walton*, 256 Kan. 484, 489, 885 P.2d 1255 [1994]).

In addition, the facts of *Green* are distinguishable. In that case, Green pleaded no contest in 1996 to two counts of capital murder, among other charges, on the State's evidence that she intentionally set fire to the family home resulting in the deaths of two of her children. By entering the pleas, Green avoided a possible death sentence if she were convicted at trial. About eight years later, Green filed a motion to withdraw the pleas on the grounds the expert witnesses declaring the fire to be arson relied on some scientific theories or standards that had since been called into question. And if the fire were not arson, Green would be actually innocent. The district court denied the motion, and the Kansas Supreme Court affirmed because the expert opinions were not undermined in the way or to the degree Green suggested. 283 Kan. at 547-48.

12

The court's statement about a sufficient factual basis for a plea and new evidence eroding that basis was made in the context of Green's extraordinary legal position. She entered a plea to avoid the death penalty—a circumstance that itself sets that case apart from this one. See *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) ("[T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice."). Moreover, Green's motion was premised on the notion she was actually innocent or at least could marshal evidence at the time she filed her motion to establish a reasonable doubt as to her guilt of any crime related to the fire. By contrast, Gray did not face the coercive force of a possible death sentence when he entered his plea. Nor was Gray actually innocent in the sense he had presented new evidence showing he committed no crime. The weight of the methamphetamine at less than 1 gram would have reduced the crime of conviction from a severity level 3 drug felony to a severity level 4 drug felony with a commensurate reduction in presumptive punishment. Regardless, Gray was guilty of possession with intent to distribute.

Assuming Gray entered the guilty plea after being competently advised by his trial lawyer, the district court retained the broad discretion to grant or deny the motion to withdraw the plea given the demonstrable benefits of the overall arrangement to Gray in resolving multiple charges and potential charge against him. The court established no contrary rule in *Green*.

As we have explained, we cannot conclude Gray entered a fully informed plea based on the assertions in the motion to withdraw the plea and the record before us. If Gray's trial lawyer did not adequately advise him about the full implications of the plea, including any uncertainty as to the quantity of drugs, the balance of the *Edgar* factors necessarily shifts, and the district court might exercise its discretion differently. We, of course, offer no opinion on that abstract proposition. On remand, the district court can most efficiently and effectively secure Gray's right to conflict-free representation on

13

whether to withdraw the plea by appointing a new lawyer to advise Gray on how best to proceed.

Reversed and remanded with directions to appoint conflict-free counsel for Gray and, if he requests, to hold a hearing on the original motion to withdraw his plea or a duly amended motion.